IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LILLIAN ROBLES-RIVERA<br><br>PLAINTIFF,<br><br>V.<br><br>JC PENNEY PUERTO RICO, INC.<br><br>DEFENDANT | CIVIL No.:<br><br>AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967; PUERTO RICO'S LAW NO. 100 OF 1959<br><br>Request For Jury Trial |

## COMPLAINT

**TO THE HONORABLE COURT**:

**COMES NOW THE PLAINTIFF,** Lillian Robles-Rivera (hereinafter, "the plaintiff"), by and through the undersigned counsel, allege the claims set forth in this complaint. Plaintiff's claims as to herself and her own actions are based upon personal knowledge. All other allegations are based upon information and belief supported by the investigation of counsel.

### NATURE OF THE ACTION, JURISDICTION AND VENUE

1. This is an action for age discrimination arising under The Age Discrimination in Employment Act of 1967, 29 USC 621 et. seq. This Court has jurisdiction over this action under 28 USC 1331.

2. This is also an action for religious and sex discrimination arising under Law 100 of

1

1959 of Puerto Rico, 29 LPRA 146 et seq. This claim arises from the same nucleus of operative facts of the age discrimination claim under ADEA. Accordingly, this Court has jurisdiction over this claim pursuant to 28 USC 1367.

3. Venue is proper in this district under 28 USC 1391 and 1400 because defendant JC Penney of Puerto Rico, Inc. has its principal place of business in and the claims alleged in this Complaint arose in this judicial district.

## THE PARTIES

4. Plaintiff Lillian Robles-Rivera is a 50 year old female, a Jehovah Witness Church member, a citizen of the United States and a resident of Puerto Rico. She was an employee of defendant JC Penney Puerto Rico, Inc. from November 1984 until March 2011.

5. Defendant JC Penney Puerto Rico, Inc. (hereinafter, "JC Penney") is a corporation, duly authorized to do business in Puerto Rico. Upon belief and information, it has over 500 employees.

## FACTS COMMON TO ALL CLAIMS

6. On August 11, 1994 the plaintiff was hired by JC Penney as a floor clerk, she was assigned to the Mayaguez store. Due to her excellent performance, she was promoted to "Set Execution Manager", earning an annual income of $40,149.31. At the time of her dismissal, the plaintiff was the "Set Execution Manager" with the most seniority among JC Penney's other "Set Execution managers", 26 years of service and the oldest person to held that position, 49 years of age.

8. On November 2008 the plaintiff was supervising a group of JC Penney's employees working on a Christmas set prior to the opening of the store. While working on said

set, several of the employees were talking about the Christmas and religious beliefs. Since they noticed that the plaintiff was not participating in the conversation, they asked why she didn't talked about the Christmas Holydays. The plaintiffs told them that she was a Jehovah Witness, and as such, she didn't celebrate the Christmas.

9. After hearing from the plaintiff that because of her religion she didn't celebrate the Christmas, some of the employees began questioning her on the reasons behind it. Plaintiff replied by telling them that the reasons behind it were quite complex, that if they wanted to learn more about it she could bring them some reading material that they could take home and read it.

10. A few days later, the plaintiff brought a few pamphlets and told them that whomever wanted one to ask her during their lunch break. Several of the employees told her that they wanted a copy and she gave it to them during their lunch break.

11. On November 20, 2008, the Store manager, Mr. Manuel J. González (hereinafter, Mr. González"), told the plaintiff that he didn't wanted no Jehovah Witness in his store trying to impose its religious belief upon the rest of the employees. The plaintiff explained to Mr. González that she have never tried to impose her religious beliefs upon nobody, let alone her co-workers, that some of them simply requested from her written information regarding her religion, and that while working on the sets, prior to the opening of the store, they often discussed several matters, including their respective religious beliefs.

12. On that same date, the plaintiff requested from Mr. González to held a Staff's Meeting in order to clarify any misunderstanding arising from said incident. He simply told her no and warned her that he would fire her if said meeting ever took place.

13. From that moment on, Mr. González began harassing the plaintiff. His acts of harassment included, among others: a) Avoiding to communicate the plaintiff; b) Refusing to meet with her; c) By-passing her authority and giving conflicting orders to employees under her direct supervision; d) Not inviting her to staff's meetings; e) Requesting from other employees not to communicate with her; f) Making denigratory comments about her; g) Excluding her from Manager's Lunches and especial activities.

14. Even Mr. González's wife made denigratory comments about the plaintiff. After the plaintiff offered to help Mr. González wife choose some clothes, Mrs. González told the plaintiff, in the presence of another manager, "No thanks, I don't want to look like a Jehovah Witness".

15. After said incident, every time that the plaintiff requested a meeting with Mr. González he simply denied her request. Since Mr. González kept on diminishing her duties, the plaintiff reported said incidents to Mrs. Lenise Ortiz (hereinafter, "Mrs. Ortiz").

16. After the plaintiff expressed her concerns to Mrs. Ortiz, Mr. González worsened his Already discriminatory behavior towards the plaintiff. He went as far as to write her a memo on <u>November 2009</u> for the incident that occurred on November 2008.

17. From November 2009 until February 2011, Mr. González ignored the plaintiff and annulled her duties and leadership among JC Penney's employees with the sole intention of causing her to quit her job after 26 years of excellent service to the company.

18. Since the plaintiff refused to quit her job, on March 2, 2011 Mr. González called her to his office and told her that her position was eliminated from all of JC Penney's

   branches in Puerto Rico, and that she was going to be terminated on March 31, 2011.

19. Immediately, the plaintiff asked Mr. González why she was not offered one of the new Job positions that were been offered to other employees. Mr. González simply replied that it was because of her "salary", in direct reference to her years of service and vested benefits.

20. On March 4, 2011 the plaintiff got a call from Mrs. Margie Benitez, who worked at JC Penney's Personnel Department. Mrs. Benitez told the plaintiff that she needed to sign several papers regarding her termination. When the plaintiff questioned her on why the other "Set Execution Managers" were offered the new job position and she was being terminated, Mrs. Benitez told her that Mr. González had decided not to offer her one of the new positions.

21. The plaintiff even questioned Mrs. Benitez as to the fairness of her termination, since she was aware that week before being advised of her termination, Mr. González was already interviewing new candidates for the new job positions. Mrs. Benitez simply told her that she will contact Mr. González to see what, if any, could be done. During said phone call the plaintiff expressed that she was aware of the fact that she being discriminated due to her age and that she was protected by Puerto Rico's Law 100 and ADEA.

22. After saying that remark, the plaintiff got another call from JC Penney's Personnel Department advising her that they might hire her back on two conditions, to wit: a) Give up her 26 years of seniority; b) Be paid just $7.25 instead of the $17.42 per hour that she used to earn.

23. After hearing said information, the plaintiff fell into a deep depression and refused to be further denigrated by JC Penney.

24. After the plaintiff was terminated, JC Penney relocated the following "Set Execution Managers" and/or associates to new job positions, all of whom had less seniority and were younger that her: a) Mrs. Marilis Silva; b) Mr. Andrés Almejeira; c) Mrs. Nicole Rios; d) Mrs. Jeannette Montalvo.

25. Eventually, JC Penney hired younger males to fill the new job positions that became available at the time of plaintiff's dismissal.

26. JC Penney willfully violated the Age Discrimination in Employment Act disposition by terminating the plaintiff because of her age. Moreover, JC Penney also willfully violated the disposition set forth in Puerto Rico's Law 100 of 1959 by discriminating against the plaintiff due to her religion and sex.

27. After being wrongfully terminated, the plaintiff tried to procure a new job. Due to her age, she was only able to find one on July 1, 2011 that pays just $8.00 per hour, less than half of what she used to earn at JC Penney.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

28. The filled a claim with the EEOC, as required by federal law, on December 06, 2011.

29. On January 10, 2012 the E.E.O.C. issued a RIGHT TO SUE LETTER, the plaintiff received it on January 13, 2012.

## EXTRAJUDICIAL CLAIMS

30. During the Month of May 2011, the plaintiff tried to settle her claims with JC Penney. JC Penney rejected plaintiff extrajudicial settlement offer.

## FIRST CAUSE OF ACTION – AGE DISCRIMINATION UNDER ADEA

31. The allegations contained in paragraphs 1-30 are incorporated herein by reference.

32. The actions of Mr. González and JC Penney constituted a willful violation of ADEA, supra, since plaintiff's dismissal, and offer to rehire her earning less than half of what she used to earn and losing her 26 years of seniority, was based on her age.

## SECOND CAUSE OF ACTION – DISCRIMINATION
## (RELIGION AND SEX) UNDER LAW 100

33. The allegations contained in paragraphs 1-30 are incorporated herein by reference.

34. The actions of Mr. González and JC Penney, Inc. constituted discrimination under Puerto Rico's Law 100 of 1959, supra, since Mr. González discriminatory acts were reported to JC Penney and it failed to take the necessary measures to avoid them form happening in the workplace let to an adverse change in plaintiff's employment conditions and her eventual dismissal.

## THIRD CAUSE OF ACTION - RETALIATION CLAIMS
## UNDER ADEA AND LAW 100

35. The allegations contained in paragraphs 1-30 are incorporated herein by reference.

36. JC Penney's decision deny her a transfer to a another job position and/or to condition her rehiring to losing her 26 year seniority and pay rate due to the fact that she warned them prior to the last day of work constitutes a retaliation, in violation of ADEA, supra, and Law 100 of 1959, supra.

## **REQUEST FOR RELIEF– DAMAGES**

Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant JC Penney Puerto Rico, Inc. as follows:

A. Award the plaintiff compensatory damages under ADEA in the amount of $1,000,000.00;

B. Award the plaintiff $100,130.00 as liquidated damages under ADEA;

C. Since JC Penney willfully violated the provisions of ADEA, award the plaintiff $1,100,130.00 as punitive damages, pursuant to 29 USC Sec. 626(b);

D. Award the plaintiff $1,000,000.00 under Puerto Rico's Law 100;

E. Award Mrs. Ayala costs and attorney's fees for this action;

F. Grant plaintiff's request for a jury trial;

G. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico this 10th day of April 2012.

S/Héctor Eduardo Pedrosa Luna
_____
Héctor Eduardo Pedrosa-Luna, Esq.
USDC-PR No. 223202
P.O. Box 9023963
San Juan, PR 00902-3963
787-920-7983
787-764-7511
hectorpedrosa@gmail.com

8